**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILLIP QUINN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:24-1248** |
| **v.** | : | **(JUDGE MANNION)** |
| **WELLPATH MEDICAL SERVICES, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

Pending before the Court is Grossnickle's, Karen Merritt-Scully's, Blanche Milo's, Lynette Rich's, and SCI Coal Township Medical Department's (of the Pennsylvania Department of Corrections ("DOC")) (collectively, "DOC Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (**Doc. 48**). For the reasons set forth below, DOC Defendants' motion will be **GRANTED.**

### I. BACKGROUND

The underlying cause of action is brought pursuant to 42 U.S.C. §1983. (Doc. 1-1). On April 11, 2023, Plaintiff filed a *pro se* complaint in the Northumberland County Court of Common Pleas. *Id.* Plaintiff's complaint centers on medical treatment being provided to him from approximately 2019 through 2023 for his pre-existing cardiac and lumbar spine issues while he

was incarcerated at SCI Coal Township. *Id.* The complaint alleges, *inter alia*, that while Plaintiff was incarcerated, Defendants denied him "detrimental medical treatment[, . . . and] fail[ed] to acknowledge a known risk of serious health and safety [by] ignoring [P]laintiff's chronic care conditions[,] refusing necessary medical treatments, delayed or denied referring [P]laintiff to necessary specialist[s], and cancelled previously approved accommodations designed to lessen [P]laintiff's pain." (Doc. 1-1 at 9).

After oral argument, the County Court entered judgment in favor of DOC Defendants as to all claims of professional liability, medical negligence, and the delay or denial of medical treatment against them. (Doc. 49 at 2). Accordingly, the only remaining claim against DOC Defendants is for the alleged "delay and a denial" of medical treatment in violation of the Eighth Amendment. *Id.*

Plaintiff avers that when he first arrived at SCI Coal Township, he was "placed within a handicap cell that provided railings near the bed, [and] railings around the toilet[.]" *Id.* at 2. However, on December 10, 2019, he was removed from the handicap accessible cell and placed in a traditional double cell. *Id.* at 4. When Plaintiff inquired as to why he was transferred, staff indicated that the healthcare administrator, Merrit-Scully, and Dr. Rothman found that Plaintiff did not have a handicap, Plaintiff's previous institution did

not indicate that he needed a handicap cell, and there were no medical records sent to SCI Coal Township indicating a need for a handicap cell. *Id.* However, soon thereafter, SCI Coal Township received Plaintiff's medical records outlining his medical conditions and handicaps.

On December 12, 2019, Plaintiff was transferred to SCI Benner for a CT scan of his lower lumbar region, which showed that he had three herniated discs, two collapsed vertebrae and degenerative changes to the lumbar spine. *Id.* Plaintiff alleges that "this information was known to the Coal Township medical staff by way of transfer from the Frackville institution medical department, [and] plaintiff's medical records . . . [and] medical defendant[s] disregarded [P]laintiff's medical records and informed [P]laintiff that there [was] nothing they [could] do for [his] condition[.]" *Id.*

Starting in January of 2020, Plaintiff made several grievances regarding his medical treatment. *Id.*[1] Specifically, Plaintiff alleges that he had a history of chest pain on various occasions where he was returned to his housing unit, and on one occasion, Plaintiff was having a heart attack. *Id.* at

[1] Plaintiff notes: "these grievances were beyond the two year period of the state's statute of limitations[. The] grievances referenced within this complaint for 2020 and 2021 are only being referenced . . . as a pattern of neglect[.]" (Doc. 1-1 at 4).

5. On November 28, 2020, Plaintiff was experiencing back pain, whereby Dr. Rothman scheduled him for an MRI. *Id.* at 5. When the hospital learned that Plaintiff had a pacemaker at the time of the MRI, it returned Plaintiff to SCI Coal Township. *Id.*

On various occasions between late May and early June of 2021, Plaintiff filed several sick slips regarding severe pain in his spine and legs, and each call was denied. *Id.* Plaintiff claims that he was never seen for treatment, so he filed additional grievances with the Superintendent. *Id.* On June 8, 2021, Plaintiff wrote to Blanche Milo and asked whether he would be scheduled with his orthopedic specialist, gastroenterologist, and cardiovascular specialist because he had gone seven months without treatment. *Id.* Blanche Milo told Plaintiff that he had upcoming appointments, but Plaintiff avers that he was never taken to them. *Id.*

On February 1, 2022, Plaintiff was experiencing severe heart distress after being treated with Nitroglycerin. *Id.* at 6. He was told that he would not be transported to the hospital because he had an upcoming appointment with Dr. Robinson. *Id.* Just over two weeks later, he was seen by Dr. Robinson. During that February 23, 2022 appointment, Plaintiff told Dr. Robinson that he was experiencing chest pain, dizziness, and nausea; he was nonetheless returned to his housing unit. *Id.* The next day, on February

24, 2022, he was given an EKG and immediately sent to the emergency room for cardiac distress and heart arrythmia. *Id.* Though Plaintiff's treating physician recommended that Plaintiff return the next day for a stress test or catheterization, Dr. Robinson delayed scheduling his catheterization for another five months, until July 29, 2022. *Id.*

On April 7, 2022, Plaintiff asked Blanche Milo if his catheterization had been scheduled, and she indicated that it had not been. *Id.* On June 14, 2022, Plaintiff experienced a cardiac episode. *Id.* at 7. After an EKG was taken to confirm that Plaintiff was experiencing atrial fibrillation (AFib), Dr. Robinson was called to determine whether Plaintiff should receive emergency treatment at Geisinger Hospital. *Id.* Plaintiff was returned to his housing unit after Dr. Robinson opted not to send Plaintiff to the hospital. *Id.*

After he filed multiple grievances, Plaintiff received his catheterization surgery on July 29, 2022. *Id.* at 8. On October 10, 2022, Plaintiff was once again experiencing heart complications—his pacemaker was failing because it needed a new battery. *Id.* Plaintiff was rushed to Geisinger Hospital for emergency treatment. *Id.* On February 15, 2023, Plaintiff was seen by the Coal Township medical department for chest pains, labored breathing and low pulse rate. *Id.* at 9. Because Plaintiff was exhibiting symptoms of a heart

attack, he was transported to Geisinger Hospital for emergency treatment. *Id.* Plaintiff was hospitalized for seven days. *Id.*

Plaintiff alleges that the "Wellpath Medical Servic[es], the Coal Township medical department in collaboration with the Geis[inger] Medical Service, their agents/actors, et al. defendants presented within the . . . civil action delayed and/or denied . . . [P]laintiff detrimental medical treatment[.]" *Id.* Further, Plaintiff alleges that the defendants, "acting with the reckless disregard to a substantial risk of serious harm to [the P]laintiff is consistent with deliberate indifference in violation of his Eighth Amendment right[.]" *Id.* Plaintiff further states that "he does not allege that he received no medical treatment[. He] only alleges that the conservative course of his treatment violates the Eighth Amendment right." *Id.*

With respect to Grossnickle, "Plaintiff is asserting a [n]egligence and Eighth Amendment claim . . . in regards to her collaboration and her delay and or denial of medical treatment[.]" *Id.* at 10. Regarding Karen Merritt-Scully and Lynette Rich, "[P]laintiff is asserting a *medical* negligence and Eighth Amendment claim . . . in regards to her collaboration with the [other] defendants for the delay and or denial of medical treatment[.]" *Id.* at 10-11 (emphasis added). Regarding Blanche Milo, "Plaintiff is asserting a medical negligence and Eighth Amendment claim . . . for the delay and denial of the

scheduling for a known surgical procedure . . . and cardiovascular appointments[.]" *Id.* at 11. As mentioned, however, the only remaining claim against DOC Defendants is the Eighth Amendment claim. (Docs. 5-4 at 37, 49 at 2).

On October 6, 2025, DOC Defendants filed the instant motion to dismiss. (Doc. 48). On October 15, 2025, Plaintiff filed a response to the motion. (Doc. 55). On October 24, 2025, DOC Defendants filed a reply brief. (Doc. 56). This matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The moving

party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the Court at this stage accepts the complaint's factual allegations as true. This tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler*, 570 F.3d at 210–11 (internal citations and quotations omitted).

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v.*

*McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

Finally, the Court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**B. §1983 Claims**

§1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983; *see also Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D.Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)).

## III. DISCUSSION

**A. Statute of Limitations**

DOC Defendants first argue, and Plaintiff admits, that because the Complaint was signed on March 20, 2023, any claims based on events two

years prior to that date are time barred by Pennsylvania's §1983 statute of limitations. (Docs. 49 at 7, 1-1 at 2). Indeed, the law is clear that §1983 claims in Pennsylvania are subject to a two-year statute of limitations. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989).

Accordingly, DOC Defendants' motion to dismiss will be granted with respect to events occurring prior to March 20, 2021, as a matter of law. Plaintiff will not be granted leave to amend with respect to this issue due to its futility. *See Grayson*, 293 F.3d at 108.

**B. §1983 "Persons"**

DOC Defendants next argue that the DOC and SCI Coal Township Medical Department must be dismissed because they are not "persons" within the meaning of §1983. (Doc. 49 at 8). Plaintiff does not address this argument. (Doc. 55).

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). The United States Court of Appeals for the Third Circuit has concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." *Manchas v. Commw.*

*of Pennsylvania*, No. 3:16-CV-563, 2017 WL 440259, at *2 (M.D.Pa. Feb. 1, 2017) (quoting *Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir. 1977)). In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in §1983 actions brought in federal court. *Manchas*, 2017 WL 440259, at *2. "A jail is not a person subject to suit for constitutional violations under §1983." *Ingram v. Atlantic County Justice Fac.*, No. 10-CV-1375, 2011 WL 65915, at *3 (D.N.J. Jan. 7, 2011). Accordingly, the Court agrees that the DOC and SCI Coal Township Medical Department are not "persons" subject to suit under §1983. *Manchas*, 2017 WL 440259, at *2; *see also Nicholas v. SCI Smithfield*, No. 25-2187, 2025 WL 2807762, at *1 (3d Cir. Sept. 30, 2025) (unpublished) ("The District Court properly dismissed Nicholas's second amended complaint for failure to state a claim. SCI-Smithfield ... is not a 'person' amenable to suit under §1983[.]" (internal citations omitted)).

Accordingly, Plaintiff's claims against the DOC and SCI Coal Township Medical Department must be dismissed as a matter of law. Plaintiff will not be granted leave to amend with respect to this issue due to its futility. *See Grayson*, 293 F.3d at 108.

**C. Personal Involvement in the Alleged Wrongs**

Finally, DOC Defendants argue that Plaintiff's complaint should be dismissed because he failed to allege personal involvement by each of the defendant officials. (Doc. 49 at 8-10).

To state a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, Plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official *knows of and disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837 (emphasis added). The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *See Durmer*, 991 F.2d at 68 (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346–47 (3d Cir.1987)) *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that

a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or deiay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotations omitted)).

The mere transmission of a grievance is insufficient to show that the DOC Defendants had actual knowledge of Plaintiff's medical issues. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) ("[Plaintiff] also alleges that [Defendant] had personal knowledge of her harassment as a result of grievances she filed with his office of administration. These allegations are simply insufficient to show that [Defendant] had actual knowledge of [Plaintiff's] alleged harassment. In a large state employing many thousands of employees, a contrary holding would subject [Defendant] to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the [Defendant's] office of administration[.]").

DOC Defendants argue that their alleged failure to respond to Plaintiff's grievances is an insufficient basis to establish §1983 liability. (Doc. 49 at 8-9). While an ignored grievance is, in and of itself, an insufficient basis to claim that prison officials were indifferent to Plaintiff's medical needs, Plaintiff's complaint is not based merely on ignored grievances. For many of the grievances Plaintiff attached to the complaint, there is a corresponding "initial

review response," whereby a grievance officer acknowledged receipt of the grievance and prepared an initial response. (Doc. 1-2). Notably, many of the grievances notify DOC Defendants of Plaintiff's medical needs, which he alleges were ignored or received delayed treatment. (Doc. 1-2). Therefore, to the extent DOC Defendants argue that Plaintiff solely uses grievances as a means to establish §1983 liability, the Court rejects this argument.

However, the Court is nonetheless concerned with the extent to which Plaintiff establishes liability on the part of Grossnickle, Karen Merritt-Scully, Blanche Milo, and Lynette Rich. While he briefly mentions various interactions with these defendants, he fails to establish that each defendant had independent knowledge of—and deliberately ignored—his medical conditions.

The Third Circuit has held that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Croom v. Wagner*, No. 6-CV01431, 2006 WL 2619794, at * 4 (quoting *Rode,* 845 F.2d at 1207) (internal citations omitted).

With respect to Grossnickle, Karen Merritt-Scully, Lynette Rich, and Blanche Milo, "[P]laintiff is asserting [an] Eighth Amendment claim . . . in regards to [their] collaboration with the [other] defendants for the delay and or denial of medical treatment[,]" and/or "the delay and denial of the scheduling for a known surgical procedure . . . and cardiovascular appointments[.]" *Id.* at 11. There is no doubt that Plaintiff is thorough in articulating, chronologically, the basis for his claims. However, throughout the factual allegations, Plaintiff does not allege independent liability on the part of each defendant. Plaintiff alternatively asserts the facts in a passive manner, indicating, for example, that "was seen by Coal Township Medical Department," and "was informed" that he would not be receiving the requested treatment. (Doc. 1-1 at 6). These passive claims do not implicate any single defendant, but rather suggest that DOC Defendants were acting in concert to violate Plaintiff's constitutional rights. This is insufficient to establish a plausible claim that each defendant knew of and deliberately ignored Plaintiff's medical conditions. *See Croom*, 2006 WL 2619794, at * 4.

Although the Court takes no issue with Plaintiff's reasons for including the grievances and their responses in the underlying complaint, it finds that Plaintiff nonetheless failed to plead sufficient facts to make a plausible claim that each DOC Defendant independently "*[knew] of and disregard[ed]* an

excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837 (emphasis added). Accordingly, Grossnickle, Karen Merritt-Scully, Blanche Milo, and Lynette Rich will be dismissed from this case. However, Plaintiff will be granted leave to amend.

## IV. CONCLUSION

For the reasons stated herein, DOC Defendants' motion to dismiss, (**Doc. 48**), will be **GRANTED.** The complaint will be **DISMISSED WITH PREJUDICE** as to any claims occurring outside statute of limitations. The complaint will also be **DISMISSED WITH PREJUDICE** as to any claims against the DOC and SCI Coal Township Medical Department, because they are not "persons" within the meaning of §1983. Finally, the complaint will be **DISMISSED WITHOUT PREJUDICE** as to Grossnickle, Karen Merritt-Scully, Blanche Milo, and Lynette Rich. Plaintiff will be granted **LEAVE TO AMEND** the complaint in accordance with this Memorandum. An appropriate Order will be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 9/22/26
24-1248-01