**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILLIP QUINN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:24-1248** |
| **v.** | : | **(JUDGE MANNION)** |
| **WELLPATH MEDICAL SERVICES, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

Pending before the Court is Brian Davis, PA's and Dr. Benjamin Robinson's (collectively, "Defendants") motion to dismiss Phillip Quinn's ("Plaintiff") claims against them. (**Doc. 53**). For the reasons set forth below, Defendants' motion will be **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

The underlying cause of action is brought pursuant to 42 U.S.C. §1983. (Doc. 1-1). On April 11, 2023, Plaintiff filed a *pro se* complaint in the Northumberland County Court of Common Pleas. *Id.* Plaintiff's complaint centers on medical treatment being provided to him from approximately 2019 through 2023 for his pre-existing cardiac and lumbar spine issues while he was incarcerated at SCI Coal Township. *Id.* The complaint alleges, *inter alia*, that while Plaintiff was incarcerated, Defendants denied him "detrimental

medical treatment[, . . . and] fail[ed] to acknowledge a known risk of serious health and safety [by] ignoring [P]laintiff's chronic care conditions[,] refusing necessary medical treatments, delayed or denied referring [P]laintiff to necessary specialist[s], and cancelled previously approved accommodations designed to lessen [P]laintiff's pain." (Doc. 1-1 at 9). After oral argument, the County Court entered judgment in favor of DOC Defendants, including Dr. Robinson, as to all claims of professional liability and medical negligence. (Doc. 54 at 2).

Plaintiff avers that when he first arrived at SCI Coal Township, he was "placed within a handicap cell that provided railings near the bed, [and] railings around the toilet[.]" *Id.* at 2. However, on December 10, 2019, he was removed from the handicap accessible cell and placed in a traditional double cell. *Id.* at 4. When Plaintiff inquired as to why he was transferred, staff indicated that the healthcare administrator, Merrit-Scully, and Dr. Rothman found that Plaintiff did not have a handicap, Plaintiff's previous institution did not indicate that he needed a handicap cell, and there were no medical records sent to SCI Coal Township indicating a need for a handicap cell. *Id.* However, soon thereafter, SCI Coal Township received Plaintiff's medical records outlining his medical conditions and handicaps.

On December 12, 2019, Plaintiff was transferred to SCI Benner for a CT scan of his lower lumbar region, which showed that he had three herniated discs, two collapsed vertebrae and degenerative changes to the lumbar spine. *Id.* Plaintiff alleges that "this information was known to the Coal Township medical staff by way of transfer from the Frackville institution medical department, [and] plaintiff's medical records . . . [and] medical defendant[s] disregarded [P]laintiff's medical records and informed [P]laintiff that there [was] nothing they [could] do for [his] condition[.]" *Id.*

Starting in January of 2020, Plaintiff made several grievances regarding his medical treatment. *Id.*[1] Specifically, Plaintiff alleges that he had a history of chest pain on various occasions where he was returned to his housing unit, and on one occasion, Plaintiff was having a heart attack. *Id.* at 5. On November 28, 2020, Plaintiff was experiencing back pain, whereby Dr. Rothman scheduled him for an MRI. *Id.* at 5. When the hospital learned that Plaintiff had a pacemaker at the time of the MRI, it returned Plaintiff to SCI Coal Township. *Id.*

---

[1] Plaintiff notes: "these grievances were beyond the two year period of the state's statute of limitations[. The] grievances referenced within this complaint for 2020 and 2021 are only being referenced . . . as a pattern of neglect[.]" (Doc. 1-1 at 4).

On various occasions between late May and early June of 2021, Plaintiff filed several sick slips regarding severe pain in his spine and legs, and each call was denied. *Id.* Plaintiff claims that he was never seen for treatment, so he filed additional grievances with the Superintendent. *Id.* On June 8, 2021, Plaintiff wrote to Blanche Milo and asked whether he would be scheduled with his orthopedic specialist, gastroenterologist, and cardiovascular specialist because he had gone seven months without treatment. *Id.* Blanche Milo told Plaintiff that he had upcoming appointments, but Plaintiff avers that he was never taken to them. *Id.*

On February 1, 2022, Plaintiff was experiencing severe heart distress after being treated with Nitroglycerin. *Id.* at 6. He was told that he would not be transported to the hospital because he had an upcoming appointment with Dr. Robinson. *Id.* Just over two weeks later, he was seen by Dr. Robinson. During that February 23, 2022 appointment, Plaintiff told Dr. Robinson that he was experiencing chest pain, dizziness, and nausea; he was nonetheless returned to his housing unit. *Id.* The next day, on February 24, 2022, he was given an EKG and immediately sent to the emergency room for cardiac distress and heart arrythmia. *Id.* Plaintiff was treated with Nitroglycerin pills at Geisinger Hospital, and returned to SCI Coal Township. *Id.* Plaintiff filed several grievances over the next two months regarding the

status of the catheterization surgery recommended by the Geisinger cardiologist. *Id.*

On April 7, 2022, Plaintiff asked Blanche Milo if his catheterization had been scheduled, and she indicated that it had not been. *Id.* On June 12, Plaintiff went to medical complaining of pain in his chest and back—he was given Nitroglycerin pills and the pains subsided. *Id.* at 6. On June 13, Plaintiff was informed that his catheterization surgery had been approved for two months, and the delay was due to scheduling with Geisinger Hospital. *Id.* On June 14, 2022, Plaintiff experienced another cardiac episode. *Id.* at 7. After an EKG was taken to confirm that Plaintiff was experiencing atrial fibrillation (AFib), Dr. Robinson was called to determine whether Plaintiff should receive emergency treatment at Geisinger Hospital. *Id.* Dr. Robinson provided Nitroglycerin pills, and Plaintiff's pain subsided after twenty-five minutes. *Id.* Plaintiff was returned to his housing unit after Dr. Robinson opted not to send Plaintiff to the hospital. *Id.*

Plaintiff returned to sick call on June 19, 2022, regarding digestive issues; he was treated with Nitroglycerin pills and Tums. *Id.* After he filed multiple grievances, Plaintiff received his catheterization surgery on July 29, 2022. *Id.* at 8. On October 10, 2022, Plaintiff was once again experiencing heart complications—his pacemaker was failing because it needed a new

battery. *Id.* Plaintiff was rushed to Geisinger Hospital for emergency treatment. *Id.* On February 15, 2023, Plaintiff was seen by the Coal Township medical department for chest pains, labored breathing and low pulse rate. *Id.* at 9. Because Plaintiff was exhibiting symptoms of a heart attack, he was transported to Geisinger Hospital for emergency treatment. *Id.* Plaintiff was hospitalized for seven days. *Id.*

Plaintiff alleges that "[Defendants] presented within the . . . civil action delayed and/or denied . . . [P]laintiff detrimental medical treatment[.]" *Id.* Further, Plaintiff alleges that Defendants, "acting with the reckless disregard to a substantial risk of serious harm to [the P]laintiff is consistent with deliberate indifference in violation of his Eighth Amendment right[.]" *Id.* Plaintiff further states that "he does not allege that he received no medical treatment[. He] only alleges that the conservative course of his treatment violates the Eighth Amendment right." *Id.* In addition to the Eighth Amendment claim, Plaintiff seemingly alleges medical negligence. *Id.* at 12.

On October 13, 2025, Defendants filed the instant motion to dismiss. (Doc. 53). On November 22, 2026, over a year later, Plaintiff filed a response to the motion. (Doc. 80). This matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This

requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the Court at this stage accepts the complaint's factual allegations as true. This tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler*, 570 F.3d at 210–11 (internal citations and quotations omitted).

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v.*

*Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

Finally, the Court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**B. 42 U.S.C. §1983**

§1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983; *see also Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

> or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D.Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)).

## III. DISCUSSION

### A. §1983 Claims

Defendants claim that Plaintiff failed to allege their deliberate indifference to his serious medical needs. (Doc. 54 at 9-10). To state a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, Plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official *knows of and disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at

837 (emphasis added). The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *See Durmer*, 991 F.2d at 68 (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346–47 (3d Cir.1987)) *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotations omitted)).

The Third Circuit has held that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Croom v. Wagner*, No. 6-CV01431, 2006 WL 2619794, at * 4 (quoting *Rode,* 845 F.2d at 1207) (internal citations omitted).

**i. Dr. Robinson**

Defendants first argue that Plaintiff merely disagrees with the treatment Dr. Robinson provided him, which is an insufficient basis for a §1983 claim. (Doc. 54 at 13). However, Defendants misevaluate Plaintiff's claims. With respect to Dr. Robinson, "[P]laintiff is asserting [*inter alia*, an] Eighth Amendment claim . . . in regards to the delay and or denial of medical treatment[,]" and "the failure to provide a recommendation for the scheduling of plaintiff's cardiac surgical procedure, pain management, and steroid injections as well as therapy recommendations . . . and chronic care treatment . . . until it was necessary [for] the need for emergency medical assistance[.]" (Doc 1-1 at 12). Such claims are supported by the facts asserted in the complaint.

For example, Plaintiff asserts that he was seen by Dr. Robinson on February 23, 2022. (Doc. 1-1 at 6). At that visit, Plaintiff told Dr. Robinson that he was experiencing chest pain, dizziness, and nausea. *Id.* Plaintiff alleges that despite his complaints, Dr. Robinson did not record any of his symptoms and returned Plaintiff to his housing unit. *Id.* The next day, on February 24, 2022, Plaintiff was experiencing the same symptoms, given an EKG and immediately sent to the emergency room for cardiac distress and heart arrythmia. *Id.* These facts, accepted as true, create a plausible claim

that Dr. Robinson "*[knew] of and disregard[ed]* an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837 (emphasis added). Accordingly, Defendants' motion will be denied with respect to Dr. Robinson.

**ii. Brian Davis**

Regarding Brian Davis, Defendants claim that the only allegations not outside the statute of limitations are attached in the Plaintiff's exhibits, and fail to state a plausible claim for relief. (Doc. 54 at 15). Indeed, after a review of the complaint and its corresponding exhibits, Plaintiff's only factual allegations against Brian Davis are limited to two grievances he filed: from (1) February 28, 2022, and (2) July 8, 2022. (Doc. 1-1 at 18, 42).

In the February 28, 2022 grievance, Plaintiff alleges that:

> On 2/1/22, I was seen for sick call by Pa. Davis for severe chest pains, irregular heart[beat] and shortness of breath[.] [A]fter having an EKG it indicated a severe distress of my heart [rhythm.] [A] recommendation by Dr. Robinson was requested to send me to the Geisinger emergency ward, yet it was denied by an unknown individual[.]

(Doc. 1-1 at 18). The July 8, 2022, grievance names Brian Davis as one of the many Defendants who purportedly knew of a serious health risk and failed to schedule his surgical procedure. *Id.* at 42. However, neither of these

grievances specify Brian Davis's involvement with the alleged failure to provide medical care nor delay in scheduling Plaintiff's procedure.

Moreover, the mere transmission of a grievance is insufficient to show, as a matter of fact, that Brian Davis "*[knew] of and disregard[ed]* an excessive risk[.]" *Farmer*, 511 U.S. at 837 (emphasis added); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) ("[Plaintiff] also alleges that [Defendant] had personal knowledge of her harassment as a result of grievances she filed with his office of administration. These allegations are simply insufficient to show that [Defendant] had actual knowledge of [Plaintiff's] alleged harassment. In a large state employing many thousands of employees, a contrary holding would subject [Defendant] to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the [Defendant's] office of administration[.]").

Because "allegations of participation or actual knowledge and acquiescence . . . must be made with *appropriate particularity*[,]" the Court finds that Plaintiff has not stated a plausible claim for relief as to Brian Davis. *Croom*, 2006 WL 2619794, at * 4 (emphasis added). Accordingly, Defendants' motion will be granted with respect to Brian Davis.

**B. Medical Malpractice Claims**

Defendants finally argue that Plaintiff's state tort claims of medical malpractice should be dismissed. Procedurally, Defendants claim that Plaintiff has not filed a certificate of merit ("COM") in support of his medical negligence claims, in accordance with Pennsylvania Rule of Civil Procedure 1042.3. (Doc. 54 at 19). However, the United States Supreme Court has held that a state's requirement that a plaintiff asserting a medical malpractice or professional negligence claim "submit an affidavit from a medical professional attesting to the suit's merit" does not apply in federal courts. *See Berk v. Choy*, 607 U.S. 187, 189 (2026). *Berk* forecloses the application of the COM requirement in Pennsylvania Rule of Civil Procedure 1042.3 to Plaintiff's medical negligence claims against Defendants.

Defendants next argue that Plaintiff has failed to plead the elements required for medical malpractice. (Doc. 54 at 17-18). Although the complaint loosely states that Defendants were medically negligent, (Doc. 1-1 at 11-12), this claim should be construed as one pursuant to the Eighth Amendment. In his response to the instant motion, Plaintiff explicitly states that he is:

> Not indicating any argument of inadequate medical treatment or care or whether he has received medical treatment or has any disagreement with the care that has been provided at any time . . . [P]laintiff is only stating that due to delay and denial

> of the treatment he has suffered immensely and that due to the actions of these [defendants'] delay in scheduling and providing timely care[,] he has suffered from their negligent acts in violation of his Eighth Amendment [r]ights [against] [c]ruel and [u]nusual punishment.

(Doc. 80 at 4). Additionally, on April 6, 2026, Plaintiff filed a "statement of disputed facts," in which he avers:

> The [Defendants] claims within [their statement] of relevant facts that the [P]laintiff has argued that within his civil complaint . . . [he] believes that that the medical treatment provided to him was below the standard of care. The plaintiff states that [nowhere] within his civil complaint . . . [does he state] that [P]laintiff has believed that the medical treatment provided were below standard. In the [P]laintiff's complaint at (p. *9) the [P]laintiff stated that the conservative manner of the [Defendants] in delaying and denying medical treatment is a violation of the Eighth Amendment.

(Doc. 66 at 1). "It appears, therefore, that Plaintiff wishes to only proceed on Eighth Amendment claims against Defendants." *Tisdale v. Zaloga*, No. 1:19-CV-1022, 2020 WL 1531330, at *4 (M.D.Pa. Mar. 31, 2020). Given that a COM is not required for medical negligence claims pursuant to *Berk*, and given Plaintiff's explicit statement that he wishes to proceed only on his

Eighth Amendment claims; to the extent Defendants' motion seeks to dismiss medical malpractice claims, the Court will deny the motion as moot.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss, (**Doc. 53**), will be **GRANTED** as to Brian Davis and **DENIED** as to Dr. Robinson. The motion will be **DENIED AS MOOT** as to any claims of medical malpractice. Finding no "bad faith, undue delay, prejudice, or futility[,]" Plaintiff will be granted **LEAVE TO AMEND** the complaint in accordance with this Memorandum. *Alston*, 363 F.3d at 236. An appropriate Order will be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 9/30/2026
24-1248-02